Good morning, Your Honors, and may it please the Court, Holt Ortiz Alden on behalf of Defendant Appellant Andres Burgara. I would like to reserve four minutes and I will watch my time. Errors occurred at every stage of this case. Today, there are three issues that I would like to address specifically. First, I want to start with the sentencing guidelines because the dangerous weapon enhancement issue is cleanly presented. If this Court holds that the enhancement was wrongly applied, it can remand for resentencing without addressing Mr. Burgara's other sentencing issues. Second, I would like to address the warrantless search of Mr. Burgara's car. And third, the jury instructions at trial. But first, with respect to the guidelines, it was plain error for the District Court to apply the firearm enhancement on the drug counts because Mr. Burgara had also been convicted of two Section 924C counts. Those Section 924C counts led the guidelines to be increased by 120 months, 10 years. That's separate from, of course, the mandatory minimum. But within the formal guidelines range, that was an automatic addition of 120 months. The District Court then added a separate and additional two-level enhancement for having guns in connection with the drugs. That's clearly the type of double counting that this Court prohibits. In this Court's opinion in the working case, the Court recognized the tension between the Section 924C guideline, which is Section 2K2.4, and the drug guideline, Section 2D1.1. So on the 924C counts, I think your briefs argued about sufficiency of the evidence and whether the convictions are multiplicitous. And the government argues the convictions are non-multiplicitous because the guns were found or the firearms were found at different locations. Is that the argument you're making to us now? No, Your Honor. I'm addressing specifically the two-level guidelines enhancement under Guidelines Section 2D1.1, subsection B1. Was that applied to the grouped counts? Yes, that was applied to the grouped counts, exactly. And the ambiguity in applying the Section 924C count and the plus two under the drug counts is because Section 2K2.4 directs courts not to group the Section 924C count. The enhancement was not put on top of the 924C counts. It was put on top of the grouped counts? That's correct, Your Honor. Although, in formal guidelines speak, they were both added to the total guidelines range. And so, there was the initial drug weight that set the base defense level. The court added plus two under 2D1.1 for the firearms and then added 120 months for the Section 924C. Okay, but just to understand your position, what you're saying is when you have a 924C count, you just cannot add to some other count this two-level enhancement? Yes, exactly. And that's what this court held in the Aquino case. Following this court's opinion in Castillo and of the Supreme Court's decision in Kaiser, there is the question of whether the guideline text is ambiguous. And here, because of the double-counting issue, it is. In a different circumstance, the count of conviction and the specific offense characteristic would be grouped. And that's under Guideline Section 3D1.2. Here, the Commission made the decision that the 924C does not group. And that's in the text of 2K2.4. And so, instead of having just the plus two for having a gun in connection with the drugs under the drug guideline, a defendant's formal guidelines range is increased by 60 months. And the Commission decided that that fully addresses the harm of possessing a gun with or near drugs. So, 2K2.4, comment four applies only if the sentence is imposed under this guideline. And the sentence was not imposed under 2K2.4. It was imposed under 2D1.1. So, why is that applicable? Well, Your Honor, the District Court, of course, was under an obligation to correctly calculate the guidelines prior to determining the sentence. Right, but the sentence was imposed under 2K2.4. I believe that the District Court calculated the guidelines by using the drug guideline based on weight and the plus two for a firearm, and then adding 120 months to that guidelines range based on the Section 924C count, which was pursuant to Section 2K2.4. You're really saying this is just a double punishment for having guns in relation to  That's exactly right. And that creates ambiguity in how to apply both of them because the law of the circuit is that double punishment for the exact same harm is improper. And so, here, the commentary provides a perfectly reasonable resolution to that ambiguity, which this Court has previously held is correct and appropriate. In other words, if the government had chosen not to bring counts three and counts eight, the 942C counts, so there was no conviction for those, then the gun enhancement under the group drug charges would have been appropriate. Exactly. And again, I think the a kino and working opinions from this Court make that clear. I take it the government is now arguing post-Castillo that if you just read what this says, it says increased by two levels, so we should just do that. That's right, Your Honor. And I think it's correct to conduct a normal regulatory statutory interpretation determination as to the guidelines, but that involves more than just looking at the language in 2D1.1 subsection B1. It requires, as the Supreme Court has repeatedly noted, looking at the structure of the text and other sections that may be relevant. Here, if the Court looks at both 2D1.1 and 2K2.4, there is tension. And in the working case, the Court specifically mentioned that tension. That creates this double-counting ambiguity. What is the actual impact of this two-level enhancement on the sentence? Your Honor, I don't know the months, but at this zone in the guidelines, a two-level enhancement can be quite significant. It can be in the range of two to four years, often. And so in incorrectly calculating the guidelines, the District Court used the wrong starting point in sentencing Mr. Bergara. And that would, if the Court were to remand on that issue for full resentencing, that would resolve, or the Court would not need to address Mr. Bergara's other sentencing points, including multiplicity. Why do you say we wouldn't need to address it? I mean, wouldn't there need to be some guidance on some of these other points you've raised? I think that, I'm sure the District Court would welcome the Court's guidance on these issues, but the Court wouldn't be required to address those if it were to remand for full resentencing because the guidelines were calculated incorrectly. Well, isn't, I'm sorry to interrupt. Well, I mean, maybe we have the same question, is what do you mean by full resentencing? Because if the only error here was, I mean, there's other arguments being made about multiplicity, which Judge Ikuda referenced, and so perhaps the District Court will want to know the answer to that if, in your view, there's already going to need to be some amount of resentencing. Because if you claim there's an error on that front, that could be repeated and it could come back here again. Yes, Your Honor. I think it's within this Court's discretion to remand just on the guidelines issue for full resentencing. As to the multiplicity counts, I think the drug charges, Section 841 multiplicity, is distinct from the gun charges, Section 922 multiplicity, and we do argue in the papers that the 924C double charge is a sufficiency argument, a little bit different from normal multiplicity. So I can begin with the 841 drug charges. Possession with intent to distribute is a continuing offense. That's the law of the circuit. And in the Mancuso case, this Court determined that a seven-year-long possession charge for cocaine was appropriately included in a single count. How do you, I mean, here they were found in two places, right? Two separate batches of cocaine. Yes, they were in two places. Section 841 creates punishments based on the type of drug and the drug weight. That's how it enhances punishments. Someone who obtains a certain amount of a drug, cocaine, and puts them in both of his cars hasn't committed more than one offense under Section 841. The simultaneous possession of the exact same drug is one offense. And what happened in Mancuso was that the government charged it, these possessions over seven years, as a single possession offense and argued that it had met the 500-gram mandatory minimum. In that case, the jury found that it had not. Well, I mean, what are the limits to this? Because on the one hand, somebody could have a bag of cocaine in the front seat of the car and a bag of cocaine in the back seat of the same car, and obviously in that case you would say, no, that's the same offense. But here we do have two cars, right? And they're found in different places, and so why wouldn't we regard that as two separate instances of possession? Again, our position broadly is if it's simultaneous possession of the exact same drug, it should be a single 841 offense. What if he had, you know, cocaine in his car and then cocaine in his other house 50 miles away? I think that Congress, under the section and title, has made the decision to punish that based on weight. You would say that's one offense? Yes. And I do think that the Mancuso case is significant there because it was an extended period of different possessions, essentially. And Previtt, the case of Previtt, is it distinguishable? I'm sorry, Your Honor? Previtt. Yes, Your Honor. Precisely because it, well, for two reasons. First, the reasoning as to the heroin in that case is dicta, as the court itself stated in the opinion. Second, the heroin was found to have different purity levels in each of the separate locations. So, separate location plus different, so if the drug has the same purity level, it's one offense. And if it's different purity levels, it's two offenses? Is that what you're saying? That was what the court in Previtt relied on. So, yes. And in this case, there's no evidence that the cocaine in the two locations was distinguishable in any way other than location. Is the review on this plain error? It is plain error, Your Honor, because it's purely a question of law. I think the court has the discretion to review it de novo. The Castillo case also addresses that issue, but it was not raised below. The Stevens and Clay opinions from the 6th and 11th Circuits also address this issue and both held that having simultaneous possession of the same controlled substance, of course, is just one offense. With respect, because I'm running short on time, Your Honor, I'm happy to speak more about the gun multiplicity, but I would prefer to turn to the jury instructions here. With respect to the jury instructions, this court can review the instructions for plain error under the Enbanque-Perez case, and in doing so, despite the fact that trial counsel for the defense provided the instruction, this court should review it the same as any other instructional error, although for plain error. The first two steps of plain error are established here under the Kraus and Rios cases. Kraus explicitly rejected this list of factors that the jury was instructed on, and a few years later in Rios, the court reaffirmed that holding and said that Kraus had rejected. Are you talking about instruction 27? Instruction 27. Your Honor, I have it in my notes as instruction 24, which is the list of factors. So the government says that this was invited here or it was taken verbatim from Bergara's proposal. Is that not correct? That's incorrect, Your Honor. This court's invited error doctrine is very limited following the Perez-Enbanque opinion. The government would be required to show that defense counsel knew of the proper legal definition and decided against using it with the jury. Here there's no evidence, and the government has not pointed to any evidence, that trial counsel was aware of the Kraus case or the Rios case. Right. But, I mean, is the language not language that was suggested by the defense? It was. And this court regularly reviews instructions invited by the defense for plain error when there's no evidence that trial counsel knew of the specific legal standard and chose to waive the jury being correctly instructed on that standard. And so in, for example, the Burt case that's cited in the papers, the defense submitted the instruction and the court ultimately reversed for plain error. And so this is not an issue of waiver. Here it was forfeiture because there's no evidence trial counsel knew the correct legal standard and therefore this court can review for plain error. Very briefly, with respect to prejudice on the instruction, this court has two related opinions on Section 924C instructions that I think are relevant. One is the Irons case, the other is the Thongzhi case. In Thongzhi, this court found instructional error but determined that it was harmless because the error was very limited and the jury must have found the proper standard. In the Irons case, however, the court reversed under the plain error standard. It determined that the improper instructions took away from the jury the subjective intent requirement. So even though it provided appropriate factors for the jury to consider, they were only objective factors. The same is true here. By providing this false, erroneous instruction, the court allowed the jury to convict Mr. Bergara without a finding that he subjectively had the intent appropriate under Section 924C. The government also referenced every single one of these improper factors in its rebuttal closing argument and invited the jury to convict Mr. Bergara on that basis. I would like to reserve the remainder of my time. Thank you. Thank you. Okay. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Connor Wynne for the United States. This court should affirm Mr. Bergara's convictions and, in large part, his sentence. That is because the evidence in this case was legally gathered, because his trial was free of any prejudicial error, and because his sentence suffers no plain or preserved constitutional or guidelines error. I intend to address the same issues that Mr. Bergara just has here, but I am happy to answer any questions that this court may have about the many issues in this case. Let's take one issue off the table. You do agree that we need to send it back, or you suggest we do, to deal with the part of the sentence in which he started with 151 months, and that is more than the maximum for counts 4, 5, 6, and 9, correct? I agree with that. It's within the maximum for count 1, which is the statutory possession with intent to distribute methamphetamine, so it's sound on that, but as to those four other counts, it exceeds the statutory maximums in effect at that point in time, but that's not grounds to alter the overall sentencing package in any way, because the 151 sentence went to the groups count, of which that possession to distribute methamphetamine is the lead count. That's your argument to the district court. If we send it back, of course, the district court is free to do what the district court wants to do, aren't they? Well, I don't think there's even a need to vacate the sentencing package as a whole here, because from the sentencing transcript, it's clear that the district court had the intent of putting 151 months on the grouped counts, and then having 120 months to follow on the 924 counts. That sentencing intent can be left intact here, because all that's necessary is to leave the 151 on the lead methamphetamine charge, and the 120 on the two ensuing 924s. So the same sentencing intent can be effectuated. Since we're on sentencing, I'll turn to both the Castillo and the multiplicity issues. Starting with the Castillo issue. To be clear, this issue is on plain error before this court. Whether or not the district court plainly erred in imposing the two-point enhancement under sentencing guideline 2D1.1 in the wake of Castillo. Now- Let me just pause you on that. If we didn't have Castillo, would this, and let's just forget about plain error, but if we didn't have Castillo, is your position that this would have been improper? Absolutely, Your Honor. So under Aquino, this would have been improper, and in fact, the government advocated against the methodology in Castillo, and continues to kind of object to that overarching framework. But given that Castillo is now the law of the land, the way that we approach the sentencing guidelines in this circuit are different. We ask whether the guidelines text and structure itself reveals any ambiguity in how the district court is supposed to go about sentencing a defendant under the guidelines. But Castillo was not decided at the time of the sentencing, right? No, it wasn't, Your Honor, but here before this court, we're asking whether in light of that intervening case development, there is now error and plain error in addition. In particular, plain error is usually judged at the moment of the appeal. So granted, when the district court made that guidelines determination under this court's precedent, I think that it was incorrect. But intervening case law has now remediated it proper. In some sense, maybe the district court lucked out, but that's where we are. Well, but I mean, I think your friend on the other side has a fair argument that, you know, if you look at the guidelines structurally, we don't want to double count the same weapon twice essentially. And so isn't that what we would be doing here if we applied this two-level enhancement given the 924C charges? I think the guidelines generally try to strive against double counting. I don't disagree with that sentiment, but I don't think that means that double counting is always impermissible under the guidelines. And I think when you have a perfectly clear guideline instructing the court how to go about calculating the sentence, there's really no way to vary from that. Right, but I mean, just to pause you there, right, the question posed to Castillo is going to be, is this, you know, unambiguous? And your friend on the other side says, well, yeah, if you look at that one line in isolation perhaps, but when you look at the guidelines as a whole, no, there is ambiguity, essentially a structural ambiguity. And at that point, we have, we do have a prior case, pre-Castillo case that we have to contend with. We have to, we would have to conclude that, in fact, that prior case is now clearly irreconcilable with Castillo and the methodology there. I agree with you. I think that is what's on the table here is concluding that Aquino isn't irreconcilable with Castillo. I think the problem, if double counting was always against the, it was always forbidden under the guidelines, I think the argument you're articulating would be sound and have good basis, but it's not always prohibited. And because of that, I don't think you can look at some nebulous inference from this broad guideline structure and say that that overcomes the plain text, both of 2D1.1 and the text of 2K.4, right, 2K.4 in its own text, this is the guideline that addresses 924C charges, says nothing about how you're supposed to adjust the offense level for the predicate offenses. I mean, usually Castillo is a relatively new case. The government didn't seek rehearing en banc in that case either, I don't believe. But we're here with the precedent. Usually Castillo, you would think, would be of benefit to defendants. And so here the government's actually claiming that, in fact, it can take advantage of the methodology. I think oftentimes Castillo will benefit the defendants, as it did in that case. But the methodology is going to move across guidelines, and I don't always think it's going to be a defendant always wins card. In some cases, the guidelines are now going to act more harshly under the reasoning that we have in Castillo. Now, to be clear, there are ways that that can be amended. For example, the Sentencing Commission could move the commentary to 2D1.1 and 2K.4 up into the text of the guidelines itself, right, and correct this. The Sentencing Commission has started to take that approach with regards to a number of guidelines in the wake of decisions like Castillo. But it has not yet done so with regards to this particular case. Do you know what impact this two-level enhancement has on the package here? I can't say for certain. I'm sure that it did raise the overall guidelines range. I think it's worth noting that Mr. Begar was, in any event, sentenced to a below-guidelines sentence in this case, and he received 271 months, which fell below the guidelines range that took into account. Except that wasn't the trial court's intent. If you read his full sentencing transcript, what he was trying to do is with the two five-year mandatory minimums, which stack, he was using those 10 years to add to the 151. The 151 is, and so 151 plus 120, he was trying to get to the low end of the full range. So if he got rid of the two-level enhancement, the 151 would have been lower. And I think that's what we're wondering now. We can look at the chart and figure that out. But I think his intent was to stack it all up to that low range from what the guideline suggested range was. I'm going to agree. I think that his intent with regards to taking into account both the predicate offenses and then the separate 924C offenses was to reach a below-guidelines result, and then he distributed that sentence across the predicate and 924C counts. That's certainly what he did. You may not know this off the top of your head, but you referenced the idea that elsewhere in the guidelines there does allow double counting. Do you happen to know other places that that would you direct us to on that? Not off the top of my head, but if the court would like, I'm happy to provide a citation to that in a Rule 28J letter for an example of where double counting is at least sometimes permitted under the guidelines. Turning to the multiplicity issue that we were discussing, that's been mentioned here specifically as it pertains to Section 841A1. Now I think it's notable that this court has never addressed multiplicity in the context of this offense. It's most analogous case law has been in the 922G context, but 841A1 operates a little bit.  You were about to. I was going to ask you, do you think it should be different? But go ahead. I think 841A1 both operates similarly and differently, and that's because of the unit of prosecution underlying that offense. The unit of prosecution for an 841A1 offense is the possession of a given drug. So there's two questions there, right? First you have to ask what is the drug that is being possessed, and then the second is what are the contours of a possession, and that is what this appeal concerns, the contours of a given incident of possession. Now what happens in the 922G context and what was adapted to this trial is that the jury is instructed that in order to convict, it needs to find that the defendant stored different cocaine in different places. You can see that in the jury instructions that the district court gave here. Therefore when the jury returned a verdict finding Mr. Bergara guilty on both 841A1 counts, that reflected the jury's finding that he did in fact possess different cocaine in different places. That distinctiveness finding by the jury is enough to confirm that there are two separate incidents of possession here, and it can only be overturned by this court, typically in the 922G context, but we think the same rule should apply here. If there's insufficient evidence for a jury to find distinctive possessions of the same drug, we would submit that there certainly is enough evidence for the jury to make such a distinctiveness finding here. The cocaine was kept in two separate locations, one in a mobile Honda and one in a truck that largely sat outside of Mr. Bergara's home. Not only that, there was a reference to... So what is the right unit here, right? I mean, what if he had two separate stashes of cocaine in one car? Two possessions or one? It's a much closer question than this case, Your Honor. I think in that incident, you might start to veer towards one singular possession, right? Because presumably they're within his reach or easy access, all in the same instantaneous moment of time. And I think that gets... I mean, does it matter then that two of these cars were essentially associated with the same house? Because you could say, well, the relevant unit really should be his domicile, and now we have two cars in the same general area, and that's one possession. No, I don't think so, because as it was secured here, the cocaine was in two different places, even though at the same time. And I think this gets to the point that in determining whether there are two incidents of possession, it's a very fact-intensive inquiry that's going to turn on a number of different factors that might come up in a case. We've been talking about place or moments in time. Judge Okuda, your reference to the Privet case also noted purity. That's another factor that could show distinctiveness of a possession. Packaging on the drugs, for example, if one were packaged with one brand label and one were packaged with another. If it was shown that one stash were used to serve one clientele and another stash was primarily for a different cast of clients. What do we have here then? Just that it was in two cars? Is there anything more on the packaging or some of these other details that you're referencing? Yes. I would submit that here you have both two different places, and you have different packaging. So the places are obvious. One was found in a white Honda, the other was found in a truck. As for packaging, the cocaine found within the white Honda, it's in small, medium, and large amounts. It's clearly meant for easy distribution depending on the amount being bought by a customer at a given point in time. Meanwhile, the packaging of the cocaine in the truck is in bulk. It's just a large, large portion of cocaine. Clearly not used in the same manner, right, for on-the-street customer-to-customer distribution. Is that, I mean, how relevant is this to the concept of possession? Because if he had a huge bag of cocaine in his room and then smaller little baggies also in the same room, I'm not sure you would be saying, well, that's actually two different possessions because of the two different types of packaging if they're both in the same room. Maybe not, but I think, once again, that this is getting at how fact-intensive an inquiry this is. And it's typically the proper matter for the jury. This Court really only has a role to come in and say that, in fact, is a single possession when no reasonable fact-finder could find different possessions. I think on the facts of this case, given the packaging and the divergence in place, there is sufficient evidence for the jury here to have concluded that Mr. Bergara did, in fact, have two separate stashes of cocaine. And I certainly don't think there's enough evidence here for this Court to conclude that there's plain error in sentencing him on two separate 841A1 counts based on that separate possession. What is the consequence of, you know, if you were not to prevail on this and there was only one, is there only, there is still a possession of cocaine. How does that affect the sentence in any way? So I think if this Court were to conclude that the 841A1 count has to fall because of a multiplicity problem, the knockdown effect that has is one of Mr. Bergara's 924C convictions also has to come. Okay. Because the two 924C convictions were each respectively based on one 841A1 conviction that had to do with the possession of cocaine. Each 924C count under this Court's presidency... Okay. So those were stacked. So this actually does have a pretty significant impact. Right. I think that it, I mean, at the very least, five years would fall off the sentence. That's correct. Turning away from the sentencing issues that we've been discussing so far, I think it's worth getting to the jury instruction issues that Mr. Bergara raised. A couple of points here. First, as the panel was noting, Instruction 27 is classic invited error, even under the Ninth Circuit's somewhat stringent invited error standards. Mr. Bergara proposed the instruction, proposed that multi-factor instruction that the District Court gave. The government, in fact, objected to that instruction before the District Court. You can see that on pages, on supplemental excerpts of records 74 to 76, where we objected to that instruction and told the District Court, do not give it. We cite there a case called the United States v. Lopez, which is from this court, which talks about how the sufficiency analysis for the infuriance of the 924C instruction is supposed to go. That case actually derives from the Krause and Rios cases disapproving the seven-factor instruction that was incorporated into Instruction 27. Nevertheless, our objection was overruled, and the District Court accepted Mr. Bergara's invitation to use this instruction at trial. There could not be a more classic case of invited error. Even if this court were to review that instruction and the other one for plain error, I think Instruction 27, it's not, there is one plain defect in that instruction, and that's the conflation of Section 924C's infuriance of and dearing and relation clauses. I do agree that that's a plain error, but under this court's precedent in both Fongsi and Nobari, it's one that has long been deemed to not substantially affect a defendant's rights, and is categorically not corrected for a miscarriage of justice. On Instruction 27, the other parts of it that Mr. Bergara faults, for example, that seven multi-factor instruction, I don't even know that that actually constitutes error under this court's case law. This court and Krause and Rios have said that those seven factors aren't particularly helpful for evaluating the sufficiency of the evidence for a 924C count, because that's a holistic process that should look at all the facts in a case. But I don't think it was air to tell the jury that they could consider those seven factors, especially when the instruction is phrased in a manner that says, including these seven factors. That seems correct. The jury certainly can think about those seven things, and under this court's case law, anything else that is relevant to the infuriance of inquiry. I don't want to cut you off, but I'm not sure if you were going to address the multiplicity on the 922G. Certainly. Can you just walk through that? Yes, I'm happy to. So under this court's long-standing precedent, section 922G, multiple 922G counts can stand as long as the guns are stored or acquired in different places or at different times. That occurred here, right? And you can see that because the three guns that formed the basis for these counts were the ones in the white Honda where Mr. Bergara was arrested, the one found inside his home, and the one found inside the truck. The gun found... There were actually two. I mean, there were two in the home and two in the truck. Is that accurate? There were multiple, but the way that that works is each of those would be sort of one storage of guns. Okay. So you actually had five guns, three counts, three places. I agree with that, yes. Okay. I also think it's worth noting that to the extent that one could think that the guns in the truck and the guns in the house might be stored on the same property, at least one of the guns in the house was acquired at a different point of time. We note that fact in a footnote in our brief when we're discussing this. That acquisition of the gun at a different time provides another ground for a separate 922G count apart from the guns stored at the home and truck. Just conceptually, do you think this works differently than the cocaine counts in terms of analyzing what should be regarded as a multiplicitous count? I do think that they function somewhat differently, and that is principally because of the fact that when, for example, a pile of drugs is, in theory, infinitely divisible, you can take a pound of cocaine and make it two things of half a pound or four things of a quarter of a pound. You cannot take one gun and disassemble it and now have two guns. It doesn't work in quite that same way. So that's why in the 922G context, we're looking at whether guns are stored or acquired and why the government is suggesting here that when it comes to cocaine, it's a bit more of a holistic analysis in deciding whether two separate caches of cocaine can be considered distinct possessions. Does that make sense, Your Honor? Yeah, it does. Thanks. Okay. I think I'll finish up on the jury instructions unless the court has questions about anything else in this matter. Okay. Then I want to talk about the second plainly erroneous jury instruction in this case. That concerns the gunplay to role instruction. I think under this court's case law in Fongsy, that instruction quite clearly fails to affect Mr. Baragara's substantial rights on appeal. Fongsy actually involved basically the identical same language used in a jury instruction, and this court confirmed that that was error, but it was reviewing whether or not that error was harmless beyond a reasonable doubt. This court said yes. So it affirms that it was harmless on an even higher standard than what we're facing here. The reason for that was that the gun, the only instances when the gunplay to role language being used to define the in furtherance of requirement of a section 924C crime is going to matter, according to the Fongsy opinion, is the rare instance where a defendant unknowingly brings a gun to a drug transaction, and the gun somehow becomes involved in that drug transaction or is revealed to others, and in that way manages to further the drug deal. That was not the case in Fongsy, and it is certainly not the case here. Mr. Baragara kept three separate drug stashes of cocaine in three separate places, and every time he stored weapons with those stashes. I think to say that Mr. Baragara unknowingly kept drugs and guns together is impossible, and I don't even think he made that argument during trial. In fact, his counsel conceded as much. For that reason, that instruction also is not going to substantially affect his prejudicial rights. With a minute left, I think it's worth saying one moment about the cumulative error doctrine, which does actually have some role to play here in the sense of there are two potential, there are at least two plain errors, and I think the confrontation clause issue is likely also a plain error, so the cumulative error doctrine matters here. How to go about that is this court has to first determine whether or not errors are  Then it groups them accordingly. It reviews any preserved errors first, determines if there was harmlessness given all those preserved errors taken together. Then if it concludes it's harmless, it moves to the plain errors, taking into account the previous errors not under the plain error review standard and the plain errors. It then asks whether all those errors substantially affect Mr. Bergara's prejudicial rights. This is the analysis that the Tenth Circuit and the First Circuit have adopted. Specifically, the Tenth Circuit has gone about this approach in United States v. Carraway. This court's never addressed how to go about that analysis. We would recommend that approach. For reference, United States v. Carraway is 534 F.31290, 1302, Tenth Circuit, 2008. And there is no cumulative error here given the overwhelming evidence against Mr. Bergara. Thank you, Your Honors. Okay. I have a few minutes left for rebuttal. Your Honors, if I may, I plan to very quickly address multiplicity, the guidelines, and then the jury instruction. Judge Ikuda, I was incorrect. It is Instruction 27 that we're all talking about. My apologies. With the cocaine counts and multiplicity, the government references distinctiveness between separate cocaines. There's no basis in the 841 statute for the factors that the government is referencing. Certainly, the instruction given to the jury here, which was whether they are distinct, has no basis in this circuit's case law. And so, in looking at the one case that we do have, Mancuso, which found a singular offense across years of possession, I think that here, simultaneous possession is the appropriate unit. With respect to the 922G counts, this Court's opinion in the Wega case is controlling. As far as I can tell, that's the only opinion where this time and place inquiry was appropriate, was relevant. In that case, this Court determined that because the government had indicted on and ultimately proven at trial that the firearms were acquired at a separate time and place, multiple 922G counts were appropriate. And so, with the other cases cited by both sides, they're easily distinguishable because time and place was shown. Here, as in the Wega matter, that was directly at issue. Time and place was required. Finally, or excuse me, with respect to the guidelines double-counting, Judge Bress, you asked about other case law that this Court has with respect to double-counting. I don't have cases to cite, but generally, the case law discusses whether different harms were considered. Even if it was the same act, if there were multiple harms, then it's not impermissible to double-count. Here, the 924C and the... There's different harms. I'm not sure it would be double-counting. I think the suggestion being made is no, it's just essentially an additional penalty for the same thing, and that's okay because we can have that. Yes, Your Honor. And so, I agree. I think here, it's the exact same acts and the exact same harms. In this circuit's double-counting case law, that means it was impermissible double-counting, as opposed to sometimes stacking is appropriate. And here, it would not be. Finally, with respect to invited error, the government did object to Instruction No. 27, but only on the basis that the in-furtherance of phrase does not need to be defined. And that was correct. The law of this circuit is that a district court need not define that phrase, but it did not object on the basis that defendants' proposed factors were erroneous as a matter of law. And so, here, it is appropriate for this court to review on plain error. I see that I'm over my time. Thank you very much. Thank you. The case of the United States v. Andres Bergara is submitted and adjourned for this session and the week. All rise. This court for this session stands adjourned.
judges: IKUTA, BRESS, Bastian